

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JUN - 2 2017

CLERK, U.S. DISTRICT COURT
By _____
Deputy

| | | |
|---|---|---|
| WAYNE M. KLOCKE, | § | |
| INDEPENDENT | § | |
| ADMINISTRATOR OF THE | § | |
| ESTATE OF THOMAS | § | |
| KLOCKE., | § | CIVIL ACTION NO. 4:17-cv- |
| *Plaintiff*, | § | 00285-A |
| | § | |
| v. | § | |
| | § | |
| THE UNIVERSITY OF TEXAS | § | |
| AT ARLINGTON; and, | § | |
| NICHOLAS MATTHEW | § | |
| WATSON, | § | |
| *Defendants*. | § | |

## THE UNIVERSITY OF TEXAS AT ARLINGTON'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS

# **TABLE OF CONTENTS**

TABLE OF CONTENTS .......................................................................ii, iii

INDEX OF AUTHORITIES................................................... iv, v

INTRODUCTION .................................................................. 1

FACTS ................................................................................. 2

A.  Background of disciplinary proceedings and policies at
      UT-Arlington ............................................................ 6

STANDARD OF REVIEW ..................................................... 7

ARGUMENTS & AUTHORITIES............................................ 8

I.   Plaintiff's deliberate-indifference claim fails to state a claim for
      which relief may be granted ..................................... 9

   A.   Plaintiff fails to allege any harassment was based on Klocke's
         sex ...................................................................... 13
   B.   Plaintiff fails to allege harassment that was "severe, pervasive,
         and objectionably unreasonable" and that such harassment
         caused Klocke to be denied from an educational activity or
         benefit ................................................................ 14
   C.   Plaintiff fails to sufficiently allege that UT-Arlington was
         deliberately indifferent ......................................... 16
   D.   Plaintiff fails to sufficiently allege that UT-Arlington had
         actual notice of any sexual harassment prior to any
         harassment ......................................................... 18

II. Plaintiff fails to state an erroneous-outcome claim ........................ 19

III. Plaintiff fails to sufficiently allege a selective-enforcement claim . 26

IV. Plaintiff fails to sufficiently plead a retaliation claim ..................... 27

V.  Plaintiff fails to sufficiently plead an "archaic assumptions" claim
      to the extent he tries or one based on "sex stereotypes"................ 28

VI.  Plaintiff cannot obtain damages for Klocke's death ....................... 29

VII. Plaintiff's claim for damages is barred by the Eleventh
     Amendment ...................................................................................... 30

CONCLUSION ......................................................................................... 32

CERTIFICATE OF SERVICE ................................................................. 34

# INDEX OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)............................................ 7, 20, 22

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)............... 7, 8, 20, 22

*Bleiler v. College of Holy Cross*, 2013 WL 4714340, at *13 (D. Mass. 2013) ................................................................................................ 20

*Carmichael v. Galbraith*, 574 F. App'x 286 (5th Cir. 2014)............. 12, 15

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000) 2, 8

*Davis Next Friend LaShonda D. v. Monroe County Bd. Of Educ.*, 526 U.S. 629 (1999).................................................. 12, 14, 15, 32

*Doe v. Case Western Reserve Univ.*, WL 5522001, *at 6 (N.D. Ohio 2015) .................................................................................................... 26

*Doe v. Columbia University*, 831 F.3d 46 (2d Cir. 2016)................. 21, 23

*Doe v. Cummins*, 662 F. App'x 437 (6th Cir. 2016) .......................... 23, 28

*Doe v. Univ. of Mass.–Amherst*, 2015 WL 4306521, at *8................ 22, 24

*Doe v. Univ. of St. Thomas*, 2017 WL 811905, at *6-7 (D. Minn. March 1, 2017) .............................................................................................. 23

*Doe v. Univ. of the South*, 687 F.Supp.2d 744 (E.D. Tenn. 2009).... 20, 26

*Doe v. Washington and Lee University*, 2015 WL 4647996, at *10 (W.D. Va. August 5, 2015) ..................................................................... 21, 23

*Doe v. Western New England University*, --F.Supp.3d ---, at * 26 (February 11, 2017) ..................................................................... 20, 22

*Fryberger v. University of Arkansas*, 16-4505 ....................................... 30

*Green v. Mansour*, 474 U.S. 64 (1985) ................................................... 30

*Haley v. Va. Commonwealth Univ.*, 948 F. Supp. 573 (E.D. Va. 1996). 24

*Harris v. Saint Joseph's Univ.*, 2014 WL 1910242, at *4 (E.D. Penn. 2014) ................................................................................................ 22

*Ikpeazu v. Univ. of Neb.*, 775 F.2d 250 (8th Cir. 1985) .......................... 20

*In re Katrina Canal Breaches Litig.*, 495 F.3d 191 (5th Cir. 2007)......... 7

*Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167 (2005)................... 27

*Johnston v. Univ. of Pittsburgh of Com. System of Higher Educ.*, 97 F. Supp. 3d 657 (W.D. Penn. 2015) ....................................................... 29

*Karasek v. Regents of the University of California*, 2016 WL 4036104, at *16 (N.D. Cal. 2016).......................................................................... 13

*King v. DePauw Univ.*, 2014 WL 4197507, at *10 (S.D. Ind. 2014) 22, 26

*Lane v. Pena*, 518 U.S. 187 (1996)............................................................ 31

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383 (5th Cir. 2010)................................................................................................... 8

*Lopez v. Regents of University of Cal.,* 5 F. Supp. 3d 1106 (N.D. Cal. 2013) ........................................................................... 15, 18, 29

*Mallory v. Ohio University*, 76 F. App'x 634 (6th Cir. 2003) ................ 28

*Moore v. Regents of the Univ. of Cal.*, 2016 WL 4917103, at *3 (N.D. Cal. September 15, 2016) ............................................................. 13, 23

*Nungesser v. Columbia University*, 169 F. Supp. 3d 353 (S.D.N.Y. 2016) ...................................................................................................... 14

*Pederson v. Louisiana State University*, 213 F.3d 858 (5th Cir. 2000) 28, 32

*Sahm v. Miami Univ.*, 110 F.Supp.3d 774 (S.D. Ohio 2015)........... 22, 23

*Sanches v. Carrollton-Farmers Branch Independent School Dist.*, 647 F.3d 156 (5th Cir. 2011) ............................................................. passim

*Sossamon v. Texas*, 563 U.S. 277 (2011).......................................... 31, 32

*Williams v. Board of Regents of University System of Georgia*, 477 F.3d 1282 (11th Cir. 2007)........................................................................... 15

*Wood v. Strickland*, 420 US 308 (1975) ................................................. 17

*Yusuf v. Vassar College*, 35 F.3d 709 (2d Cir. 1994) ................. 19, 20, 26

**Statutes**

20 U.S.C.A. § 1681(a) .................................................................................. 9

20 U.S.C.A. § 1681 et seq........................................................................... 31

42 U.S.C.A. § 2000d-7(a)....................................................................... 31, 32

42 U.S.C.A. §2000d-7(a) (1-2) ................................................................... 31

**Rules**

FED.R.CIV.P. 12(b)(1) .......................................................................... 2, 30

FED.R.CIV.P. 12(b)(6) ............................................................................ 1, 8

# Introduction

This is a sad case. It involves a claim under Title IX by the estate of a deceased student at the University of Texas at Arlington.

An allegedly openly gay UT-Arlington student, Nicholas Watson, alerted University officials that another student, Thomas Klocke, had harassed him during class by typing into his web browser "gays should die." When Watson responded on his web browser that he was gay, Watson reported that Klocke told him that Watson was a "faggot" and that he "should consider killing himself." *See Plaintiff's Original Complaint*, Dkt. 1 at ¶ 31.[1]

UT-Arlington assigned Associate Director for Academic Integrity, Daniel Moore, to investigate. Moore, an experienced investigator, conducted his investigation and solely decided that Klocke violated a university policy against harassment, and should be put on probation for his final three months at the University. Moore did not find that Klocke should be suspended or expelled.

Although Klocke could have appealed Moore's decision, he did not, and he committed suicide one week later. Klocke's father, Wayne Klocke, is the Independent Administrator of Klocke's estate, and he has asserted this lawsuit against UT-Arlington.

Klocke's lawsuit fails to state a claim under Rule 12(b)(6) because for each Title IX theory Klocke advances, he fails to state a claim. UT-Arlington also asserts that this Court lacks subject-matter jurisdiction

---

[1] For brevity, future citations will be shortened to "Plaintiff's Complaint ¶ X."

because any Title IX damages claim is barred by Eleventh Amendment
Immunity. Accordingly, this Court should dismiss this case under Rule
12(b)(1).

## Facts

An allegedly openly-gay UT-Arlington student, Nicholas Watson,
alerted University officials on May 19, 2016 that student Thomas Klocke
had harassed him earlier that day during class. Watson reported that
Klocke typed into Klocke's web browser that "gays should die." When
Watson responded on his own web browser that Watson was gay, Klocke
told Watson that Watson was a "faggot" and that he "should consider
killing himself." *See Plaintiff's Complaint*, ¶ 31; *see also Exhibit 1 to
Depositions, Appx. p.* 222-223.[2]

After class, Watson spoke to his (male) professor – Dwight Long –
and then to Heather Snow, the Associate Vice President and Dean of
Students. *See Exhibit 1 to Depositions, Appx. p.* 222-223. Snow referred
the matter to Daniel Moore (male) to investigate. *See Exhibit A, Appx.
p.* 9. Moore is the Associate Director for Academic Integrity. *See Exhibit
B, Appx. p.* 71. His job was, in part, to investigate and adjudicate student
conduct cases. *See Exhibit B, Appx. p.* 71-72, 112.

---

[2] As indicated in the *Standard of Review* section, Paragraph 2 of the Complaint
references the deposition testimony of Moore and Snow and documents received from
UT-Arlington. Plaintiff asserts that the allegations found in his Complaint are, in
part, based on that testimony and documentation. *See Plaintiff's Complaint*, ¶2.
Accordingly, this Court can and should consider documents attached to the Motion to
Dismiss. These records are referenced directly in the Complaint and are central to
Plaintiff's claims. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499
(5th Cir. 2000).

Given the nature of Klocke's alleged conduct, Moore issued an "interim restriction / no contact letter" that was reciprocal; neither student was to contact the other pending the outcome of the investigation. *See Exhibits 2 and 7 to Depositions, Appx. p.* 224-227, 231. In response, Klocke emailed Moore on May 19 to assert that "I didn't violate the Student Code of Conduct." *See Exhibit 4 to Depositions, Appx. p.* 230.

Moore spoke with Klocke the next day. Klocke's version of what occurred did not make sense. On one hand, Klocke said he knew "what this was in reference to," but—on the other hand—his story is not one that would logically lead the University to investigate him. *See Exhibits 8 to Depositions and Exhibit B, Appx. p.* 237; 147-149. Klocke said that he had never previously talked to Watson, that Watson in the class session had called Klocke "beautiful," glanced at him, and that Klocke had to tell Watson to "stop." *See Plaintiff's Complaint*, ¶ 45. Klocke did not separately report his version of the incident; he offered his version only in response to the allegations made by Watson.

Moore did *not* regard Watson's allegations of Klocke's harassment ("gays should die" / "faggot" / "you should consider killing yourself") as amounting to "sexual harassment," prohibited by Title IX, which would have altered slightly the disciplinary procedure as explained below. *See Plaintiff's Complaint*, Exhibit A, UT-Arlington's Student Conduct and Discipline Policy 9, p. 22; *see also Exhibit B, Appx. p.* 74-75 ("The charges, the allegations made against Thomas Klocke were not Title IX

allegations."), 91-92. Accordingly, Moore never charged Klocke with "sexual harassment" – he treated it as generic harassment prohibited by policy. *See Exhibit B, Appx. p.* 93.

Additionally, Moore interviewed a student who witnessed part of Klocke's interaction with Moore. On May 24, Moore wrote that the witness corroborated Watson's claim that on May 19, Watson instructed Klocke: "I think you should leave," prompting Klocke to move away from Watson. *See Exhibit 8 to Depositions, Appx. p.* 237. This same witness confirmed that Watson gave him a note during class; this note corroborated Watson's version of the events. *See Exhibit B, Appx. p.* 220.

Ultimately, Moore "took all the accounts into consideration" and "looked at all the information" in rendering his May 25, 2016 decision that, under university policy, there was "sufficient evidence" to conclude that Klocke: 1) harassed Watson; but 2) did *not* threaten him.[3] *See Exhibit B, Appx. p.* 192-193; *Exhibits 10-11 to Depositions, Appx. p.* 242-244. Also on May 25, Moore met with Klocke about his findings. At the meeting, he addressed Klocke's May 24 emailed complaint to Moore that Watson was "a threat to me." *See Exhibit 9 to Depositions, Appx. p.* 241; *Exhibit B, Appx. p.* 199 ("I asked him specifically. Are there things – are there reasons you believe this student is a threat, that if he felt threatened or harassed, that he could come back to me and share those

---

[3] It should be noted that the Complaint makes great efforts to imply that Heather Snow (the only female mentioned in the Complaint) played an active role in the investigation. But the documents upon which the Complaint relies contradict that narrative. Indeed, Snow's role was very minor and she was not a decision-maker. *See Exhibit A, Appx. p.* 51-54; *Exhibit B, Appx. p.* 116.

with me so that I could then follow up, but he did not articulate anything specific.").

As is sometimes the case, Moore encountered two conflicting stories and rendered a decision. Moore did not decide to expel Klocke, nor did Moore suspend him. Instead, Klocke—a senior who was expected to graduate in fewer than three months—was put on probation by Moore and was expected to strictly follow the University's rules for those three months. *See Exhibit B, Appx. p.* 178 (Klocke to graduate in the summer of 2016); *Exhibits 10-11 to Depositions, Appx. p.* 242-244. See *Plaintiff's Complaint*, ¶ 16.

Throughout the process, Moore arranged Klocke's course-specific restriction such that UT Arlington in no way barred Klocke from timely completing all classes (and graduating from UT Arlington). *See Exhibit 10 to Depositions, Appx. p.* 242. Moore made arrangements for Klocke to meet with the professor one-on-one, do all the group work required, and take the final exam. *See Exhibit B, Appx. p.* 171, 182;[4] *see also Exhibit 8 to Depositions, Appx. p.* 235-240.

---

[4] Klocke was issued a no-contact order on May 19, a Thursday, following that morning's class. *See Exhibit 5 to Depositions, Appx. p.* 231. It is common practice at educational institutions to separate two students when one presents a credible allegation of harassment. *See, e.g., See Sanches v. Carrollton-Farmers Branch Independent School Dist.*, 647 F.3d 156 (5th Cir. 2011) (separating students after one complained of harassment). On May 20, Klocke was notified he was under investigation and was asked to visit with Moore to tell his version. *See Exhibit 6 to Depositions, Appx. p.* 232. On May 25, Moore told Klocke that he was found "responsible" for harassment and that Klocke would be on probation. *See Exhibit 10 to Depositions, Appx. p.* 242. June 6 was the last class session of the class Klocke and Watson had together. *See Exhibit 2 to Depositions, Appx. p.* 226.

Klocke had a right to appeal the decision. *See Exhibit 10 to Depositions, Appx. p.* 242. Tragically, Klocke committed suicide before his June 2016 deadline to appeal the discipline and before graduating with his degree.

A. Background of disciplinary proceedings and policies at UT-Arlington

Universities commonly have policies and procedures governing how they investigate and adjudicate claims of student-on-student harassment and other disciplinary issues. UT-Arlington's policy is attached as Exhibit A to Plaintiff's Complaint. The policy states that a Conduct Officer investigates accusations. The Conduct Officer reviews the evidence, determines whether to proceed with charges, and determines the sanctions. *See* Exhibit A to *Plaintiff's Complaint*, p. 10. Only in situations where the accused disputes the facts upon which the charges are based and the disciplinary penalty involves suspension, expulsion, or academic sanctions does the student receive a hearing with hearing officers. *See* Exhibit A to *Plaintiff's Complaint*, p. 12-13; *see also Exhibit B, Appx. p.* 170-171, ("academic sanctions" are those that affect a student's grade and can only be instituted by a faculty member; the sanction here was not an "academic sanction").

Investigations involving allegations of sexual harassment, sexual assault, sexual violence, stalking, dating violence, and domestic violence are categorized as Title IX Complaints under UT-Arlington's policies. *See* Exhibit A to *Plaintiff's Complaint*, p. 21.   The UT-Arlington procedures under Title IX are essentially the same as other types of

6

complaints, except that a Title IX investigator handles the investigation instead of a Conduct Officer, and the Title IX Coordinator oversees the investigation. *See* Exhibit A to *Plaintiff's Complaint*, p. 21. Thus, under UT-Arlington's policies, a student's right to a hearing is determined by the sanction—not the nature of the allegations.

Here, Daniel Moore was the Conduct Officer investigating the incident. *See Exhibit B, Appx. p.* 112. He did not consider the allegations to be "Title IX allegations."[5] *See Exhibit B, Appx. p.* 74-75, 219. Because the sanction was probation and was not suspension, expulsion, or academic sanctions, Klocke did not have a disciplinary hearing.

## STANDARD OF REVIEW

To survive a motion to dismiss, the plaintiff's complaint "must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). A claim is plausible on its face when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if

---

[5] Moore had also been trained as a Title IX Investigator. *See Exhibit B, Appx. p.* 26.

doubtful in fact)." *Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 544 U.S. at 555).    The Complaint must offer "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

In assessing a motion to dismiss, a "court's review is limited to the complaint, any documents attached to the complaint, **and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.**" *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir.2000)) (emphasis added).

Here, paragraph 2 of the Original Complaint references directly the deposition testimony of Moore and Snow and to the documents received from UT-Arlington (and used at deposition). Further, Plaintiff asserts there that his allegations rest, in part, directly on that deposition testimony and documentation. Accordingly, Defendant proffers the items for this Court to properly consider as part of its Rule 12(b)(6) analysis – they are central to Plaintiff's Original Complaint – and do not invoke summary judgment treatment or analysis. *Collins*, 224 F.3d at 498-499.

### ARGUMENTS & AUTHORITIES

Plaintiff asserts one cause of action against the University—Title IX.  Plaintiff attempts to plead multiple types of Title IX causes-of-action/theories.  With each theory advanced, however, Plaintiff has failed to state a claim, or his claim is barred.

## I.   Plaintiff's deliberate-indifference claim fails to state a claim for which relief may be granted.

When Moore interviewed Klocke about the allegation that Klocke had harassed Watson, Klocke said that Watson had called Klocke "beautiful" and kept glancing at him.   In this lawsuit, Plaintiff characterizes Klocke's response as a "complaint" that is a "sexual harassment" complaint.   Plaintiff claims that UT-Arlington was deliberately indifferent to Klocke's "complaint" that Watson sexually harassed him. *See Plaintiff's Complaint*, ¶¶ 28, 45, 48, 67.   Even accepting Plaintiff's characterization as accurate, Plaintiff fails to state a claim under Title IX.

Title IX states: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C.A. § 1681(a).

A university that receives federal funds may be liable for student-on-student harassment if the university (1) had actual knowledge of the harassment, (2) the harasser was under the defendant's control, (3) the harassment was based on the victim's sex, (4) the harassment was "so severe, pervasive, and objectively offensive that it effectively barred the victim's access to an educational opportunity or benefit," and (5) the defendant was deliberately indifferent to the harassment. *See Sanches v. Carrollton-Farmers Branch Independent School Dist.*, 647 F.3d 156,

9

165 (5th Cir. 2011).[6]   The *Sanches* case illustrates the Fifth Circuit's standard on several of these elements.

In that case, a female student (Sanches) accused another female student (J.H.) of sexual harassment.   Sanches claimed that over the course of weeks J.H. called Sanches a "ho," slapped Sanches's boyfriend's buttock, "and perhaps started rumors that [Sanches] was pregnant" and had a hickey on her breast.   *Id.* at 165.   Sanches also claimed that when J.H. slapped the boyfriend's buttock, she also stated, "your ass is co cute and you and Sanches are so cute."   *Id.* at 162.   In affirming the district court's grant of summary judgment, the Fifth Circuit concluded that as a matter of law J.H.'s "conduct was not sexual harassment, it was not severe, pervasive, or objectionably unreasonable, and the school district was not deliberately indifferent."   *Id.* at 165.

First, the Court held that the record lacked any evidence that these allegations were motivated by sex as opposed to "personal animus."   *Id.* The court noted that sexual harassment under Title IX must "be based on sex, per the words of Title IX, and 'not merely tinged with offensive sexual connotations.'"   *Id.*   Harassment on the basis of sex is the "sine qua non of a Title IX sexual harassment case and a failure to plead that element is fatal."   *Id.* at 166.   The Court concluded that calling a female student a "ho"—while perhaps having a sexual connotation—was not based on sex. *Id.*

---

[6] Title IX cases involving student-on-student conduct typically arise in the high-school or university context.   Undersigned counsel has seen no cases in any jurisdiction where courts make a legal distinction between the Title IX law applicable to universities and Title IX law applicable to school districts.

10

Further, the Court analyzed the "strenuous standard" of what is required to be "severe, pervasive, and objectionably unreasonable." *Id.* at 167. The Court emphasized that "objectionably unreasonable" is not a subjective standard. *Id.* The court found that J.H.'s behavior—even if it was based on sex—was "inappropriate and immature" but it was not "severe, pervasive, and objectionably unreasonable." *Id.* at 167.

Last, the Court analyzed whether the school was deliberately indifferent to the alleged sexual harassment. *Id.* at 167-168. The Court noted that for a school to be liable under Title IX, "its response, or lack thereof, to the harassment must be 'clearly unreasonable in light of the known circumstances.'" *Id.* at 167. The Court wrote that this standard "is a high bar, and neither negligence nor mere unreasonableness is enough." *Id.* Further, "Schools are not required to remedy the harassment" and "courts should refrain from second-guessing the disciplinary decisions made by school administrators." *Id.* at 167-168.

The plaintiff in *Sanches* alleged that she had reported the sexual harassment but the school unfairly dismissed her allegations without investigating the incidents. *See id.* at 168. She admitted that the school took statements after each reported event, spoke to J.H. about her conduct, and removed J.H. from a class where an incident occurred and from an extra-curricular activity where Sanches and J.H. would have had contact. *Id.* 168. Sanches claimed the investigations were "shams." *Id.*

11

The Court wrote that ineffective responses "are not necessarily clearly unreasonable" and noted that the Court "will not second-guess the school's belief that minimizing the number of interactions between the girls might alleviate their tension…and that removing one [from an extracurricular activity to which they were both a part]…was itself an unreasonable step in light of the circumstances." *Id.* at 168. Further, the Court noted that the school's investigation of the incidents led to conflicting statements from the students. *Id.* For instance, each of the two students claimed that the other student had started a rumor that she was pregnant. In fact, *J.H.* first reported that *Sanches* was spreading the rumor about *J.H.* The Court concluded that "the district's response was to take no further action" and that this decision "is not clearly unreasonable." *Id.* at 162-163, 169.

Other case law from the Fifth Circuit and elsewhere is also instructive. For example, sexual harassment based on a single incident of student-on-student sexual harassment is barred as a matter of law. *Carmichael v. Galbraith*, 574 F. App'x 286, 289-290 (5th Cir. 2014). The Fifth Circuit held that such Title IX claims have been barred by the US Supreme Court and that only those claims involving "pervasive" and "widespread" conduct with the "systemic effect of denying the victim equal access to an educational program or activity" are actionable. *Id.* (citing *Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S. 629, 633 (1999)). In another recent case involving multiple sexual assaults at the University of California-Berkeley, a court granted

12

a motion to dismiss and held that the university was not deliberately indifferent even where the university defendant failed to expel a student convicted of sexual assault and allowed him back on campus to resume taking classes. *See Karasek v. Regents of the University of California*, 2016 WL 4036104, at *16 (N.D. Cal. 2016).

Last, to the extent Plaintiff asserts that failure to adhere to the Department of Education's 2011 Dear Colleague Letter constitutes deliberate indifference, that is not the law. *Moore v. Regents of the Univ. of Cal.*, 2016 WL 4917103, at *3 (N.D. Cal. September 15, 2016).

### A. Plaintiff fails to allege any harassment was based on Klocke's sex.

Plaintiff has failed to adequately allege any harassment was based on sex. The Fifth Circuit has said that sexual harassment must "be based on sex, per the words of Title IX, and 'not merely tinged with offensive sexual connotations.'" *Sanches*, 647 F.3d at 165. In the *Sanches* case, a student called another student a "ho." The Court concluded that calling a female a "ho" was not harassment *based on sex*. *Id.*

In this case, Plaintiff alleges a single incident in which Watson allegedly "sat next to Thomas," Watson "told Thomas he thought Thomas was beautiful," Thomas told Watson that he was straight and Watson said he was gay, Watson continued "glancing" at Thomas, and Thomas told Watson to "stop." *See Plaintiff's Complaint*, ¶45. Like the complaint of harassment in *Sanches* that a female was a "ho," Plaintiff's allegations here do not constitute harassment *based on sex*. If calling a female

13

student a "ho" is not based on sex, the allegations in Plaintiff's complaint
(particularly, calling someone "beautiful") also fail to be "based on sex."
*See Sanches*, 647 F.3d at 165 (stating that calling a female student a "ho"
is not—as a matter of law—based on sex and is insufficient to create a
Title IX sexual-harassment claim); *Nungesser v. Columbia University*,
169 F. Supp. 3d 353, 364-365 (S.D.N.Y. 2016) (finding that comments
that a student was a "rapist" was not based on gender and discussing
that "harassment between men and women is not automatically
considered to be gender-based merely because the words used have
sexual content or connotations").

> B. Plaintiff fails to allege harassment that was "severe, pervasive, and objectionably unreasonable" and that such harassment caused Klocke to be denied from an educational activity or benefit.

Plaintiff fails to allege facts sufficient to satisfy the element that
the harassment was "severe, pervasive, and objectionably
unreasonable." In *Sanches*, the inappropriate conduct lasted for weeks,
there were rumors with other students affecting a person's reputation,
and there were verbal insults. Here, there was one incident during one
class where—at most—Watson told Klocke that Klocke was "beautiful,"
Watson "glanced" at Klocke, and Watson disclosed to Klocke that Watson
was gay. This sort of alleged conduct—although allegedly unwanted and
disturbing to Klocke—does not come close to rising to the level of conduct
in *Sanches*, and the Fifth Circuit found the conduct in *Sanches* was
insufficient to be "severe, pervasive, and objectionably unreasonable."
*See also Davis*, 526 U.S. at 652 (Title IX does not provide for relief for

"simple acts of teasing and name-calling"); *Carmichael*, 574 F. App'x at 289-290 (sexual harassment cannot be based on single incident).

Moreover, the Supreme Court has stated that the federal funding recipient can only be held liable where its deliberate indifference *subjects* a student to harassment. The university's deliberate indifference must cause students to undergo harassment or make them liable or vulnerable to it. *See Davis*, 526 U.S. at 644 (holding that schools can only be held liable for their own deliberate indifference to the acts of third parties, not the acts of the third parties themselves).

Here, Plaintiff fails to make any plausible allegations that the University's actions or inactions caused Klocke to be subjected to any harassment by any other third-party. Indeed, Plaintiff fails to allege that the University knew of any issues until the allegations were reported to Snow following the classroom incident. *Compare with Williams v. Board of Regents of University System of Georgia*, 477 F.3d 1282, 1293,1295-1297 (11th Cir. 2007) (plaintiff sufficiently pleaded that university subjected student to harassment because plaintiff alleged university knew of student aggressor's propensity for sexual misconduct and did nothing to supervise him or inform him of the university's expectations of him); *see also Lopez*, 5 F. Supp. 3d at 1126 (Title IX liability generally flows from two periods of harassment: (a) when a school exhibits deliberate indifference before a harassing attack in a way that makes the student more vulnerable to the attack itself or (b) when the school exhibits deliberate indifference after the attack *which causes the student*

*to endure additional harassment*.") (emphasis added and citations omitted).

### C. Plaintiff fails to sufficiently allege that UT-Arlington was deliberately indifferent.

Plaintiff fails to allege sufficient facts to raise a plausible inference of deliberate indifference.  Like in this case, the plaintiff in *Sanches* alleged that she had reported sexual harassment, but the school unfairly dismissed her allegations without investigating the incidents. *See id.* at 168; *Plaintiff's Complaint*, ¶¶ 48, 67.  She admitted that the school took statements after each reported event, spoke to J.H. about her conduct, and removed J.H. from a class where an incident occurred and from an extra-curricular activity where they would have contact. *Id.* 168.

Here, Plaintiff alleges that UT-Arlington heard conflicting stories from Watson and Klocke, interviewed them both, and removed Klocke from class after Watson first reported harassment.  Plaintiff alleges that Moore—the male university official doing the investigation—found it was a close call but ultimately believed Watson's story and did not believe Klocke. *See Plaintiff's Complaint*, ¶¶ 49-52. Moore then decided to discipline Klocke to one of the lowest levels of discipline the University has—probation. *See Exhibit B, Appx. p.* 115 (Klocke to graduate in the summer of 2016); *Exhibits 10-11 to Depositions, Appx. p.* 242-244.  See *Plaintiff's Complaint*, ¶ 16.

Like in *Sanches*, where the school heard conflicting stories and decided to not take further action, it was not "clearly unreasonable" in this case for UT-Arlington to find one student's story more believable

16

than the other student's and not take the investigation further.  If doing so were "clearly unreasonable," courts could always be called to be the appellate courts of school disciplinary decisions.[7]  But that is not the law. *Wood v. Strickland*, 420 US 308, 326 (1975) ("It is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking in wisdom or compassion.").

Plaintiff also makes a considerable effort in his Complaint to allege UT-Arlington should have treated Watson's complaint against Klocke as a Title IX "sexual harassment" complaint instead of a "harassment" complaint under the normal disciplinary procedures.  Again, though, the decision to treat the allegation that Klocke said statements such as "gays should die" as "harassment" instead of "sexual harassment" was not clearly unreasonable.[8]

Moreover, it would not have made a difference for the University to consider the accusations "Title IX" accusations.  Plaintiff asserts that Klocke would have been entitled to a hearing and additional procedure. *See Plaintiff's Complaint*, ¶ 54.  But Plaintiff misreads the UT-Arlington policies.  Even if the University had considered the harassment "sexual

---

[7] Indeed, it is not clear exactly what Plaintiff believes the university should have done to investigate Klocke's counter-allegation against Watson.  Moore interviewed both students and the professor.  He also interviewed another student in the class.  Any other witnesses were not identified.  Nor does Plaintiff allege that Klocke suggested Moore take certain actions to investigate and Moore did not.

[8] The Court will note that Daniel Moore indicated that he did *not* consider the allegations against Thomas Klocke to be Title IX allegations. *See Exhibit B, Appx. p.* 74-75, 79-81, 219; *see also Exhibit 6 to Depositions, Appx. p.* 232.  Accordingly, UT-Arlington did not follow Title IX procedures after receiving Watson's complaint because it did not classify the complaint as a Title IX complaint.

harassment" under the policies, the investigation still would have been conducted in accordance with Sub-chapter 9-300 of the policy. *See Plaintiff's Complaint*, Exhibit A, p.21 ("Allegations of...sexual harassment...shall be investigated and resolved as...outlined in Sub-Chapter 9-300" except that, in part, a Title IX Investigator would have been assigned). Sub-chapter 9-300 is the policy Moore followed. *See id.* at p.10-13. Klocke would have been entitled to a hearing *only* if "the disciplinary penalty being imposed involves Suspension, Academic Sanctions, or Expulsion." *See Id.* at p. 13; *Exhibit B, Appx. p.* 170-171 (academic sanction affects a student's grade and can only be instituted by a faculty member). Accordingly, Plaintiff's conclusory assertions that Moore did not follow UT-Arlington's procedures are red herrings. *See, e.g., Plaintiff's Complaint*, ¶ 54.

D. <u>Plaintiff fails to sufficiently allege that UT-Arlington had actual notice of any sexual harassment prior to any harassment.</u>

UT-Arlington can also not be held responsible for the single incident of alleged sexual harassment by Watson because there are no allegations that UT-Arlington knew about the alleged sexual harassment before it happened and did nothing. "Actual notice is critical because it is the deliberate failure to curtail known harassment, rather than the harassment itself, that constitutes the intentional Title IX violation." *Lopez v. Regents of University of Cal.,* 5 F. Supp. 3d 1106, 1122 (N.D. Cal. 2013). Here, Plaintiff alleges a single instance of what he claims was sexual harassment during a class period. The University

18

cannot be held responsible for any such conduct because it had no actual notice prior to the single incident that the incident would occur and Plaintiff fails to allege that the University did have notice.

For all these reasons, Plaintiff fails to adequately state a Title IX deliberate-indifference claim.

## II.  **Plaintiff fails to state an erroneous-outcome claim**

The Fifth Circuit has not yet adopted the erroneous-outcome Title IX cause-of-action.  This Court should not.  If this Court does, however, adopt that cause-of-action, Klocke has failed to meet his burden, and the Court should dismiss the claim.

In the Second Circuit and other courts where courts have adopted the cause-of-action, an "erroneous outcome" cause-of-action requires the plaintiff to plead that (1) he is innocent and was wrongly found to have committed the offense and (2) "gender bias was a motivating factor behind the erroneous finding." *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994).[9]

With respect to the first element, Plaintiff argues that the University did not follow its own policies.  But for the reasons stated above on pages 17-18, such allegations are red herrings.  Plaintiff has failed to allege any facts which would plausibly lead to an inference that Klocke was wrongly found to have committed the offense.

To plead the second element, a plaintiff may point to "statements by members of the disciplinary tribunal, statements by pertinent

---

[9] *Yusuf* was decided in 1994 before the federal courts heightened the pleading standard.

university officials, or patterns of decision-making that also tend to show the influence of gender" or "statements reflecting bias by members of the tribunal." *Id.* at 715. A plaintiff must plausibly allege that the university "discriminated against him or her *because of sex*; that the discrimination was intentional; and that he discrimination was a 'substantial' or 'motivating factor' for the university's actions." *Doe v. Western New England University*, --F.Supp.3d ---, at * 26 (February 11, 2017) (emphasis in original). Even before the heightened pleading standard in *Twombly* and *Iqbal*, "allegations of a procedurally or otherwise flawed proceeding that has led to an adverse and erroneous outcome combined with a conclusory allegation of gender discrimination is not sufficient to survive a motion to dismiss." *Yusuf*, 35 F.3d at 715.

"A court is not required to accept conclusory legal allegations cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Doe v. Univ. of the South*, 687 F.Supp.2d 744, 751 (E.D. Tenn. 2009); *see also Ikpeazu v. Univ. of Neb.*, 775 F.2d 250, 254 (8th Cir. 1985) (holding that a school's disciplinary body "is entitled to a presumption of honesty and integrity absent a showing of actual bias such as animosity, prejudice, or a personal or financial stake in the outcome can be proven"); *Bleiler v. College of Holy Cross*, 2013 WL 4714340, at *13 (D. Mass. 2013) ("alleged prejudice of university hearing bodies must be based upon more than mere speculation and tenuous inferences").

Here, Plaintiff's conclusory allegations of gender bias are insufficient to state a plausible claim of gender bias. First, Plaintiff fails to articulate any facts that Moore and/or Snow were motivated by gender bias. Nor does Plaintiff allege that females accused of the same conduct would be treated any differently or were treated differently in the past. These failures stand in contrast to reported cases where courts found that a plaintiff had met its burden to plead sufficient facts to overcome a motion to dismiss. *See e.g., Doe v. Columbia University*, 831 F.3d 46, 57 (2d Cir. 2016) ("[T]he Complaint allege[d] that during the period preceding the disciplinary hearing, there was substantial criticism of the University, both in the student body and in the public media, accusing the University of not taking seriously complaints of female students alleging sexual assault by male students. It allege[d] further that the University's administration was cognizant of, and sensitive to, these criticisms, to the point that the President called a University–wide open meeting with the Dean to discuss the issue" and the Title IX investigator was subject to public criticism); *Doe v. Washington and Lee University*, 2015 WL 4647996, at *10 (W.D. Va. August 5, 2015) (stating that Title IX investigator wielded "considerable influence" in disciplinary process and that she endorsed an article at a presentation that was biased against men and that recent actions on campus and at nearby University of Virginia were evidence of discrimination in the disciplinary procedure).

Instead, this case is similar to those cases where courts have granted motions to dismiss due to the lack of particularized allegations of gender bias. *See e.g., Doe v. Western New England Univ.*, --F.Supp.3d ---, 2017 WL 113059, at * 30 (January 11, 2017) (collecting cases from various jurisdictions); *Sahm v. Miami Univ.*, 110 F.Supp.3d 774, 778–80 (S.D. Ohio 2015) (dismissing plaintiff's Title IX claim because the complaint failed to allege any statements of members of the disciplinary body and claim that university official was biased because she wore many hats and discouraged a witness from testifying were insufficient to show gender bias); *Doe v. Univ. of Mass.–Amherst*, 2015 WL 4306521, at *8 (dismissing plaintiff's Title IX claim because he failed to cite any statements that plausibly suggested the university's gender bias and because his claim that the university discriminated against males accused of sexual misconduct was insufficient and "the type of conclusory statements that *Iqbal* and *Twombly* do not allow the court to consider"); *Harris v. Saint Joseph's Univ.*, 2014 WL 1910242, at *4 (E.D. Penn. 2014) (dismissing plaintiff's Title IX claim because he did not allege sufficient facts to support his claim that gender bias was a motivating factor in the university's decision); *see also King v. DePauw Univ.*, 2014 WL 4197507, at *10 (S.D. Ind. 2014) (denying plaintiff's motion for a preliminary injunction in part because there was no evidence that "plaintiff's gender was a motivating factor in any of [the university's] actions").

Without any factual allegations of bias by Moore or Snow, Plaintiff seems to rely on the 2011 Dear Colleague Letter guidance in an effort to

show that university officials faced a general pressure from the federal government and that this pressure created a bias against men. Courts have generally found such allegations insufficient to overcome a motion to dismiss.[10] *See Doe v. Cummins*, 662 F. App'x 437, 454 (6th Cir. 2016) (concluding that same allegation was "conclusory" and insufficient to create a plausible claim of gender bias under Title IX); *Doe v. Univ. of St. Thomas*, 2017 WL 811905, at *6-7 (D. Minn. March 1, 2017) ("this Court joins the majority of federal courts in finding a general reference to federal pressure, by itself, is insufficient to show gender bias" and contrasting general allegations of federal pressure to the specific and contemporaneous pressures in the *Washington and Lee University* and *Columbia* cases cited above in this section).

Further, even if there was pressure from the federal government to take allegations of harassment seriously, "any bias in favor of the alleged victims...and against the alleged perpetrators, is not the equivalent of demonstrating bias against male students." *Sahm v. Miami Univ.*, 110 F. Supp. 3d 774, 778-779 (S.D. Ohio 2015); *King*, 2014 WL 4197507, at *10 (university has no control over gender makeup of those who are accused by other students of sexual misconduct and any bias against students accused of sexual assault is not the equivalent of demonstrating a bias against males, even if all of the students accused

---

[10] The 2011 Dear Colleague Letter is not law but is only "guidance." *See* Dear Colleague Letter, https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.pdf, at n.1. The letter does not create a cause of action, nor does it set a legal standard to which universities must adhere. *Moore v. Regents of the Univ. of Cal.*, 2016 WL 4917103, at *3 (N.D. Cal. September 15, 2016).

of assault were male); *Haley v. Va. Commonwealth Univ.*, 948 F. Supp. 573, 579 (E.D. Va. 1996) ("a bias against people accused of sexual harassment and in favor of victims ... indicate[s] nothing about gender discrimination"); *Doe v. Univ. of Mass.–Amherst*, 2015 WL 4306521, at *9 (dismissing Plaintiff's suggestion that bias is evidenced because the decision-maker credited accuser's testimony rather than the accused).

Second, Plaintiff's Complaint affirmatively demonstrates a lack of gender bias. Plaintiff's allegations can be summarized as follows: UT-Arlington, including Snow and Moore, ignored its procedures, had a vested interest in enacting swift and harsh punishment against those who were merely accused of aggressive behavior, wished to preserve the appearance of leadership curtailing such behavior, and "railroaded" Klocke because UT-Arlington was motivated by an anti-male bias. In short, when Klocke was accused, UT-Arlington and its officials jumped to the conclusion that Klocke was guilty and they did so because Klocke is male. *See Complaint*, ¶¶ 26-29. The problem with Plaintiff's allegations, however, is that it ignores an essential fact also on the face of the Complaint: Watson is also male. *See Complaint*, ¶ 3.

The Complaint alleges that both men accused each other of harassment. Presented with different versions of the facts, and weighing the credibility of the accusations, Moore made a determination. Even if Moore erred or the process was tainted (both allegations the University denies), the motivation behind the finding that Klocke was "responsible" and the motivation behind the decision that Klocke's complaint lacked

credibility could not have been *sex* because both Watson and Klocke were male. If Moore, the UT-Arlington decision-maker, had an anti-male bias and railroaded men accused of harassment, why did he not treat both Watson and Klocke the same and punish them harshly? The very fact that he did not—a fact in the Complaint—establishes UT-Arlington was not motivated by an anti-male bias.

Moreover, Plaintiff's theory lacks plausibility because Moore is male. Under Plaintiff's theory, the male University official who investigated the situation and made a determination had an anti-male bias. *See Exhibit B, Appx. p.* 170, 179-180, 191 (Moore made the decision). This alleged anti-male bias—under Plaintiff's theory—is allegedly illustrated by Moore's finding Klocke responsible but not Watson. Plaintiff's theory does not make sense.

Further, the "punishment" Klocke received was extremely minor. Klocke was about to graduate. He was put on probation. Although he was not permitted to attend the remaining class sessions in his business class where Watson would be present, Klocke was able to have one-on-one instruction with his professor in that class so he would have the full benefit of the instruction from the professor. *See Exhibit B, Appx. p.* 167-171. Klocke was also permitted to continue doing group work and take the exam. *See Exhibit B, Appx. p.* 182.

Last, Plaintiff fails to sufficiently allege that females accused of the same conduct would have been treated any differently. In fact, his Complaint is devoid of any such allegations.

Accordingly, Plaintiff has failed to allege sufficient facts to state an erroneous-outcome claim.

### III.   Plaintiff fails to sufficiently allege a selective-enforcement claim.

A "selective enforcement" claim is one where the plaintiff asserts that, "regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender." *Yusuf*, 35 F.3d at 715. In other words, Plaintiff must plead that "a female was in circumstances sufficiently similar" to Klocke and that the female was treated more favorably. *See Doe v. Univ. of the South*, 687 F. Supp. 2d at 756. Klocke must "demonstrate[] selective enforcement through the identification of a comparator of the opposite sex who was treated more favorably by the educational institution when facing similar disciplinary charges." *See Doe v. Case Western Reserve Univ.*, WL 5522001, *at 6 (N.D. Ohio 2015). The comparator cannot be the person who accused the plaintiff. *Id*.

Here, Klocke fails to allege that any similarly-situated females would have been treated better. Further, any comparison of Klocke and Watson fails because they were not similarly-situated and they were both male. Again, if the University (through a male official) had an anti-male bias, the University would have sanctioned both Klocke and Watson and treated them harshly. Instead, the University weighed the evidence and found Klocke responsible. The sanction was a probation that was set to last only 3 months—far from a harsh sanction. *See Exhibit B, Appx. p.* 115 (Klocke to graduate in the summer of 2016);

26

*Exhibits 10-11 to Depositions, Appx. p.* 242-244.   See *Plaintiff's Complaint*, ¶ 16.

## IV.   Plaintiff fails to sufficiently plead a retaliation claim.

Klocke also asserts a Title IX retaliation claim.  To allege a claim for Title IX retaliation, Plaintiff must plead that Klocke participated in an activity protected by Title IX and that UT-Arlington took an adverse action against him because of that activity. *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 184 (2005); *Sanches*, 647 F.3d at 170. Although it is difficult to tell exactly what Plaintiff asserts is the alleged protected activity, it appears as though Plaintiff asserts that UT-Arlington retaliated against Klocke for saying that Watson was the one who harassed Klocke—which Plaintiff characterizes as a Title IX complaint.

A problem with this argument is that Plaintiff also alleges Watson submitted a Title IX complaint and Plaintiff's Complaint acknowledges that Watson was not subjected to any discipline for doing so. *Plaintiff's Complaint*, ¶¶ 28-29.  Plaintiff's retaliation claim is not "plausible on its face" because it alleges two male students each reported complaints and only one was found "responsible." *Plaintiff's Complaint*, ¶¶ 28-29, 52.  If UT-Arlington was going to retaliate against students for complaining of harassment by other students, why was only one male student allegedly retaliated against but not both?   Plaintiff's claim is not plausible.

## V. **Plaintiff fails to sufficiently plead an "archaic assumptions" claim to the extent he tries or one based on "sex stereotypes."**

Because Plaintiff knows he lacks any basis to assert a gender-based claim, he several times states in his Complaint that UT-Arlington discriminated against him based on "sex stereotypes" or "gender stereotypes." *Plaintiff's Complaint*, ¶¶ 21, 58, 62, 63, 65, 66. The Court should decline Plaintiff's invitation to ignore precedent and expand Title IX law beyond sex to include whatever "sex stereotypes" means. Further, to the extent Plaintiff uses this "sex stereotypes" phrase as alternative language to assert an "archaic assumptions" Title IX claim, he fails to state a claim.

The Fifth Circuit has acknowledged the existence of a Title IX "archaic assumptions" claim. *See Pederson v. Louisiana State University*, 213 F.3d 858, 881 (5th Cir. 2000) (holding that LSU discriminated against female athletes because of archaic assumptions about what women can do, athletically). These claims have "been applied where plaintiffs seek equal athletic opportunities." *Mallory v. Ohio University*, 76 F. App'x 634, 638-639 (6th Cir. 2003). But undersigned counsel has found no cases where courts have applied the "archaic assumptions" claims to contexts outside of athletics. *See Doe v. Cummins*, 662 F. App'x at 451 n.9 ("The 'archiac assumptions' standard appears limited to unequal athletic opportunities."). Because the Complaint does not allege unequal athletic opportunities, Plaintiff has not pleaded an "archaic assumptions" claim and to the extent Plaintiff intended to do so, the Court should dismiss it.

In rare circumstances, courts have allowed "sex stereotyping" claims to survive in the employment context. *See Johnston v. Univ. of Pittsburgh of Com. System of Higher Educ.*, 97 F. Supp. 3d 657, 679-680 (W.D. Penn. 2015) (discussing law and granting a motion to dismiss where plaintiff alleged that he was the victim of discrimination as a transgender male who was prohibited from using university bathrooms and locker rooms of his gender identity rather than his birth sex). Counsel has not found any cases in the Fifth Circuit where such a claim was used in this context as part of a Title IX claim.   The cases found in the employment context are limited to those where a plaintiff has alleged "that he did not conform to his harasser's vision of a how a [man or woman] should look, speak, and act." *Id.*   These cases "are based on behaviors, mannerisms, and appearances." *Id.*   To the extent Plaintiff brings a "sex stereotyping" claim under Title IX, this Court should not recognize it.   Further, for the same reasons above related to why the erroneous-outcome claim fails, such a claim would fail here too.   Watson and Klocke were both male.   As is Moore.   And Plaintiff has failed to allege what "sex stereotypes" to which Klocke did not conform and how that alleged nonconformance caused UT-Arlington to find him responsible for harassment.

## VI.   <u>Plaintiff cannot obtain damages for Klocke's death.</u>

To the extent Plaintiff claims that any Title IX violation caused Klocke's death, such a claim fails for lack of causation. *See Lopez v. Regents of University of Cal.*, 5 F. Supp. 3d 1106, 1122 (N.D. Cal. 2013)

(fatal car accident "far too attenuated" from allegations in the Complaint to state a claim against university for Title IX violation where abusive boyfriend drove car and accident killed student and her minor son). Even if the University made mistakes in its handling of Watson/Klocke accusations (which it denies), suggesting that those mistakes caused Klocke's death is far too attenuated. The Court should dismiss any claim for damages based on Klocke's suicide.

## VII. Plaintiff's claim for damages is barred by the Eleventh Amendment.[11]

Although the Supreme Court has not addressed the issue, the principles of sovereignty establish that Title IX does not waive states' immunity under the Eleventh Amendment to the United States Constitution. Accordingly, the Court should dismiss Plaintiff's damages claim under Rule 12(b)(1).

The Complaint acknowledges that UT-Arlington is an agency of the State of Texas. *See Original Complaint*, ¶9. Under the Eleventh Amendment, federal courts lack jurisdiction over un-consenting states unless Congress unequivocally expresses its intent to subject the states to jurisdiction. *See Green v. Mansour*, 474 U.S. 64, 68 (1985). Where a statute is susceptible to multiple plausible interpretations, including one preserving immunity, courts will not consider a State to have waived its

---

[11] This argument is currently before the 8th Circuit in *Fryberger v. University of Arkansas*, 16-4505. In February of 2017, seven states filed an amicus brief asserting this argument. Those states were Arkansas, Arizona, Kansas, Louisiana, Nebraska, South Carolina, and Texas.

immunity.  *Sossamon v. Texas*, 563 U.S. 277, 287 (2011).  A waiver of immunity for damages claims must be "unmistakably clear." *Id.* at 285.

In *Sossamon*, the statute at issue stated that plaintiffs could obtain "appropriate relief against a government" and the statute's definition of "government" included the States. *Id.* at 282, 285.  But the Supreme Court held that this type of language "is not the unequivocal expression of state consent that our precedents require" and held that damages claims were not available under that statute. *Id.* at 285. Indeed, any ambiguity of the statute is construed in favor of State immunity. *Id.* at 288.

Here, no Congressional Act unequivocally subjects the States to suits for money damages for Title IX violations.  The best Plaintiff can cite is 42 U.S.C.A. §2000d-7(a) (1-2), which waives immunity for suits and discusses remedies.[12]  But the Supreme Court has already found that statute ambiguous.  *See Lane v. Pena*, 518 U.S. 187, 200 (1996) (statute ambiguous so no unequivocal waiver of Federal Government's immunity).  And the statute does not explicitly state that damages are available for suits against the States.  *See Sossamon*, 563 U.S. at 287.

---

[12] The statute reads:

> (1) A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of....title IX of the Education Amendments of 1972 [20 U.S.C.A. § 1681 et seq.]...

> (2) In a suit against a State for a violation of a statute referred to in paragraph (1), remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in the suit against any public or private entity other than a State.

At best, the statute is ambiguous and ambiguous statutes are insufficient to abrogate a State's Eleventh Amendment immunity for suits for money damages. *Sossamon*, 563 U.S. at 287. Accordingly, the Court should dismiss Plaintiff's suit because money damages are not available against a State.[13]

## CONCLUSION

Accordingly, UT-Arlington asks this Court to dismiss this case with prejudice.

---

[13] The Fifth Circuit ruled in *Pederson v. Louisiana State University*, 213 F.3d 858 (5th Cir. 2000) that Congress abrogated Eleventh Amendment immunity in Title IX suits. *Id.* at 875-876. To the extent this Court reads *Pederson* or any other case to stand for the proposition that 42 U.S.C.A. § 2000d-7(a) waives *damages* claims for suits under Title IX, it is UT-Arlington's position that *Pederson* was wrongly decided and/or that the law has changed following *Sossamon*. Moreover, the *Davis* case cited above was not against a State and so the same concerns regarding Eleventh Amendment immunity were not an issue before the Court in that case. *See Davis*, 526 U.S. 629.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil
Litigation

ANGELA V. COLMENERO
Chief, General Litigation Division


Sean Flammer
Assistant Attorney General
Texas Bar No. 24059754
Frank A. King
Texas Bar No. 00794091
Assistant Attorney General
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, TX 78711-2548
sean.flammer@oag.texas.gov
frank.king@oag.texas.gov
(512) 463-2120 PHONE
(512) 320-0667 FAX
**COUNSEL FOR DEFENDANT
UNIVERSITY OF TEXAS-
ARLINGTON**

## CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2017, a true and correct copy of the foregoing document was served via electronic mail to all counsel of record.

Chaiken & Chaiken, P.C.
Legacy Town Center III
5801 Tennyson Pkwy., Suite 440
Plano, TX 75024
kchaiken@chaikenlaw.com

Jonathan T. Suder
Friedman, Suder & Cooke, P.C.
Tindall Square Warehouse No. 1
604 East Fourth Street, Suite 200
Fort Worth, Texas 76102
jts@fsclaw.com
**Attorneys for Plaintiff**

Darren Gibson
Littler Mendelson, P.C.
100 Congress Ave., Suite 1400
Austin, TX 78701
dgibson@littler.com

Victoria Nsikak
Littler Mendelson, P.C.
2001 Ross Ave., Suite 1500
Dallas, TX 75201
vnsikak@littler.com
**Attorneys for Nicholas Watson**

Sean Flammer