IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



WAYNE M. KLOCKE, INDEPENDENT §
ADMINISTRATOR OF THE ESTATE OF §
THOMAS KLOCKE, §
　　　　　　　　　　　　　　　　　§
　　　　Plaintiff, §
　　　　　　　　　　　　　　　　　§
VS. § NO. 4:17-CV-285-A
　　　　　　　　　　　　　　　　　§
NICHOLAS MATTHEW WATSON, §
　　　　　　　　　　　　　　　　　§
　　　　Defendant. §

MEMORANDUM OPINION AND ORDER

Came on for consideration the motion of defendant, Nicholas Matthew Watson, for summary judgment. The court, having considered the motion, the response of plaintiff, Wayne M. Klocke, Independent Administrator of the Estate of Thomas Klocke, the reply, the record, and applicable authorities, finds that the motion should be granted.

I.

Plaintiff's Claims

The operative pleading is plaintiff's amended complaint filed September 30, 2019. Doc.[1] 177. Plaintiff's sole cause of action is for defamation arising from events that occurred on May 19, 2016, during a class at the University of Texas at Arlington ("UTA") in which defendant and Thomas Klocke ("Thomas") were students.

---

[1] The "Doc.__" reference is to the number of the item on the docket in this action.

II.

## Grounds of the Motion

Defendant urges a number of grounds in support of his motion. First, he says that plaintiff failed to preserve a defamation claim based on defendant's Facebook posts because he failed to comply with the Texas Defamation Mitigation Act, Tex. Civ. Prac. & Rem. Code §§ 73.051-.062 ("TDMA"). Second, plaintiff cannot show that defendant's statements were false, that they were defamatory, or that defendant acted negligently. Third, plaintiff failed to disclose any damages caused by defendant and, thus, cannot pursue damages; plaintiff cannot in any event demonstrate that defendant's statements caused Thomas any pain and suffering; and, Thomas's suicide is an intervening cause that precludes damages related to his death. Finally, plaintiff cannot show that defendant omitted facts or juxtaposed them in a manner that created a defamatory false impression. Doc. 202.

III.

## Applicable Summary Judgment Principles

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim or defense if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247

(1986). The movant bears the initial burden of pointing out to the court that there is no genuine dispute as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986). The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case. Id. at 324; see also Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 597 (1986). In Mississippi Prot. & Advocacy Sys., Inc. v. Cotten, the Fifth Circuit explained:

> Where the record, including affidavits, interrogatories, admissions, and depositions could not, as a whole, lead a rational trier of fact to find for the nonmoving party, there is no issue for trial.

929 F.2d 1054, 1058 (5th Cir. 1991).

The standard for granting a motion for summary judgment is the same as the standard for rendering judgment as a matter of law.[2] Celotex Corp., 477 U.S. at 323. If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. Matsushita, 475 U.S. at 597; see also Mississippi Prot. & Advocacy Sys., 929 F.2d at 1058.

IV.

Undisputed Facts

When this lawsuit was first filed, plaintiff included claims against UTA. Doc. 1. The court granted UTA's motion for summary judgment, including in its memorandum opinion and order a lengthy recitation of the undisputed facts giving rise to the action. Doc. 160 at 6-13. Plaintiff acknowledges and relies on a number of those facts. Doc. 212 at 2. The summary judgment record here, although not as complete,[3] establishes the same pertinent facts.[4]

---

[2] In Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc), the Fifth Circuit explained the standard to be applied in determining whether the court should enter judgment on motions for directed verdict or for judgment notwithstanding the verdict.

[3] For example, the record here does not contain all of the attachments to the Declaration of Daniel Moore, who conducted the investigation on behalf of UTA.

[4] The ruling in favor of UTA was affirmed on appeal. Klocke v. Univ. of Tex. at Arlington, 938 F.3d 204 (5th Cir. 2019).

On May 19, 2016, Thomas and defendant sat next to each other in a class at UTA. Thomas made statements that defendant perceived to be threatening. Defendant posted to Facebook:

> The guy sitting next to me just typed into his computer "ga;ys should die." Then told me I was a "fa\*\*ot" and that I should "kill myself." I haven't felt this uncomfortable in a long time.

Doc. 213 at APPX 88. Defendant told Thomas he should leave. Doc. 204 at App. 2. Blake Lankford ("Lankford"), sitting next to Thomas, noted that Thomas and defendant were both really tense. Doc. 213 at APPX 99. Thomas left and took a different seat when he returned to class. Id. at APPX 100; Doc. 204 at App. 2. Thomas later told Dan Moore ("Moore"), who was assigned by UTA to investigate the matter, in an email that he was the one who moved "to alleviate any tension." Doc. 213 at APPX 36.

During class, defendant emailed the professor conducting the class, Dr. Long ("Long"), to report the incident. Doc. 204 at App. 2. Immediately after the class, he spoke to Long, who advised him to report the incident to UTA officials. Id. Defendant visited Heather Snow ("Snow"), Associate Vice President and Dean of Students, to discuss the incident. Id. Snow advised him to put his complaint in writing, which he did. Id. He wrote:

> Dear Heather,
>
> This is Nicholas Watson. Today, May 19th, during my 8:00 AM organizational strategy course, MANA 4322-001. We had to move classes from 153 to 154 due to a

computer issue. At this point, I sat next to the
student who was the aggressor, Thomas Klocke.

After commenting about privilege in today's society,
Thomas opened up his laptop and typed into his web
browser's search bar, "Gays should die."

At which point, I typed into my search bar on my web
browser "I'm gay." I was confused and was trying to
understand why he was typing and showing me this.

After this, he acted like he was yawning and told me
that "well then you're a faggot."

I then told him, "I think you should leave." I felt
terribly scared and uncomfortable.

He then told me that "you should consider killing
yourself."

I approached my professor, Dr. Dwight E Long, regarding
the incident after class. He advised I go to student
support services.

I then went to Heather Snow, this email recipient, who
advised me further.

Nicholas Watson.

Doc. 213 at APPX 21-22.

By letter dated May 20, 2016, Moore informed Thomas that he was being investigated for allegations of threat (physical abuse or threat of physical abuse) and harassment (any violation of the University's harassment policy). Doc. 213 at APPX 28. Moore told Thomas not to attend class while the investigation was pending. Doc. 204 at App. 41. Moore interviewed Thomas, defendant, Lankford, and Long. Id. App. 43-47. Moore determined that defendant's version of events was credible and that Thomas's

6

version was not. Id. App. 46-47. Among other things, when Moore met with Thomas, Thomas had a sheet of paper that appeared to be a script or outline that he kept referring to; there would be long pauses before Thomas would answer questions; and, Thomas's responses to follow-up questions lacked any substance. Id. App. 45. Moore found that Thomas was guilty of harassment but that there was insufficient evidence of a threat. Id. App. 50. He disciplined Thomas with disciplinary probation and the requirement that Thomas not be allowed to attend class, but he could still work with Long, take tests, do group work outside class, and obtain credit he needed to graduate. Id. App. 48.

On June 2, 2016, Thomas committed suicide with a gun he had purchased on May 20, 2016. Doc. 124 at APPX 239; Doc. 204 at App. 87. Before June 2, 2016, Thomas's father was not ever concerned that Thomas would commit suicide. Doc. 204 at App. 87; Doc. 213 at APPX 131. He described Thomas as upset, distraught, frustrated, Doc. 213 at APPX 128, embarrassed, alienated, and isolated. Id. APPX 131. A fellow student noted that Thomas did not seem stressed, anxious, unhappy, or worried until May 24 when he told his group he had to take the exam later and seemed stressed after they told him how hard the exam was. Id. APPX 135.

V.

Analysis

To prove a cause of action for defamation, plaintiff must show that defendant published a false statement of fact to a third party, that the statement was defamatory concerning Thomas, the statement was made with the requisite degree of fault, and Thomas suffered compensable damages as a result. In re Lipsky, 460 S.W.3d 579, 593 (Tex. 2015); WFAA-TV, Inc. v. McLemore, 978 S.W.2d 568, 571 (Tex. 1998). Pursuant to the TDMA, a person may maintain an action for defamation only if he has made a timely and sufficient request for a correction, clarification, or retraction from defendant or the defendant has made a correction, clarification, or retraction. Tex. Civ. Prac. & Rem. Code § 73.055(a).

Defendant first argues that plaintiff cannot pursue defamation claims as to the Facebook publications since he failed to make a timely and sufficient request as required by § 73.055(a)(1). The Fifth Circuit has held that failure to make such a request before the statute of limitations expires prevents a plaintiff from pursuing a defamation claim.[5] Tubbs v. Nicol, 675 F. App'x 437, 439 (5th Cir. 2017). The Supreme Court of Texas has

---

[5] In the absence of an intervening change in authority, this court is bound by Fifth Circuit precedent interpreting Texas law. Gilbane Bldg. Co. v. Admiral Ins. Co., 664 F.3d 589, 594 (5th Cir. 2011).

8

not decided the issue and its appellate courts are split. See Butowsky v. Folkenflik, No. 4:18CV442, 2019 WL 2518833, at *46-48 (E.D. Tex. Apr. 17, 2019)(discussing cases); Zoanni v. Hogan, 555 S.W.3d 321 (Tex. App.-Houston [1st Dist.] 2018, pet. filed)(agreeing with Tubbs).[6] Defendant requests that the court make an Erie guess that the Supreme Court of Texas would agree with Tubbs and Zoanni, with the consequence that plaintiff's claims based on the Facebook posts would be dismissed. Doc. 203 at 5-9. The court need not decide the issue, however, as it is clear that plaintiff cannot prevail in any event.[7]

Defendant says that plaintiff cannot establish any of the elements of a defamation cause of action as to any statement alleged to be defamatory. The alleged defamatory statements are set forth in plaintiff's amended complaint, Doc. 177 at 15-16, ¶ 46, to wit, defendant falsely published that: Thomas wrote on his computer "all gays should die" or "gays should die," id. ¶ 46a; Thomas had told defendant both "you should kill yourself" and "you should consider killing yourself," id. ¶ 46b; Thomas had

---

[6] The cases are agreed that, at the very least, failure to make a timely demand for retraction prevents the plaintiff from seeking exemplary damages.

[7] In particular, with regard to defendant's Facebook posts, there is no evidence that Thomas was aware of them or suffered any harm as a result. In fact, plaintiff only pleads that the injuries to Thomas arose out of "the denial by UTA of the benefits and privileges of an educational opportunity." Doc. 177 at 4, ¶ 7. "Thomas as devastated by the exclusion from class." Id. at 14, ¶ 42. There is no allegation that Thomas would have suffered without UTA's action in excluding him from class, which arose out of the email to Snow and not any Facebook post.

called him a faggot, id. ¶ 46c; other students in the classroom heard Thomas call defendant a faggot, id. ¶ 46d; and, Thomas was an aggressor. Id. ¶ 46e. Further, defendant omitted material facts from his publications that whatever altercation occurred between defendant and Thomas had ended and resolved itself early in the class session before Thomas relocated his seat, id. ¶ 46f, and that Thomas had not threatened defendant in any manner, doing so for the purpose of creating innuendo or implication that Thomas not only had threatened defendant but that the threat was unabated and needed to be abated by expelling Thomas from the class. Id. ¶ 46g. Plaintiff also makes conclusory allegations that defendant falsely published statements that damaged Thomas's occupation as a student and any future occupation he might obtain post-graduation, id. ¶ 46h; defendant falsely published facts accusing Thomas of having engaged in criminal behavior including making threats or death threats against defendant, id. ¶ 46i; and defendant falsely published facts accusing Thomas of sexual misconduct id. ¶ 46j, but does not allege any facts in support.

Plaintiff's claims are based on the premise that everything defendant did on May 19, 2016, and the days following was false, deceptive, and malicious. He contends that none of defendant's allegations regarding Thomas's conduct were true and that defendant made them up in order to get Thomas kicked out of the

class he needed to graduate.[8] The record, however, is entirely to the contrary and there is no genuine fact issue as to plaintiff's contentions.[9] As the Fifth Circuit recognized, "Moore made a finding of responsibility after developing a meaningful record." 938 F.3d at 211. Specifically,

> Moore considered the following in his decision. First, Moore knew that Watson told the same, consistent story in a contemporaneous in-class email to Long, also a contemporaneous note passed to a classmate, and then again in after-class emails and in-person discussions with Long, Snow, and Moore. Second, Moore perceived Watson to be credibly fearful of Klocke at their May 20 meeting. Third, when Moore met Klocke on May 23, he saw that Klocke relied on a written script and was unable to meaningfully answer follow-up questions. Fourth, Moore was told by the adjacent classmate that the classmate did not notice Watson behaving in a distracting manner as Klocke had alleged. Fifth, Moore's common sense suggested to him that a person whose flirtation is rejected would not tell the other person to leave and then fabricate and widely circulate a story about being threatened by that person. Sixth, Moore's investigation uncovered nothing supportive of Klocke's account, and the estate in this litigation does not identify any leads that Moore should have or could have pursued.

Id. (footnotes omitted). In sum, defendant did not publish false statements of fact about Thomas.

---

[8]In this regard, he argues that nothing Thomas said to defendant can be considered, referring to the Dead Man's Rule, Tex. R. Evid. 601. Doc. 212 at 9-10. (Of course, he takes the position that everything Thomas said to his father is absolutely true.) Here, as defendant explains, the exceptions to the Rule apply. Doc. 225 at 6-8.

[9]Plaintiff's argument regarding alleged spoliation appears to be a concocted one designed to delay the inevitable granting of summary judgment in favor of defendant. Doc. 212 at 11-12. Speculation about what evidence might exist and improbable inferences are insufficient to raise a genuine summary judgment issue. Lawrence v. Fed. Home Loan Mortg. Corp., 808 F.3d 670, 673 (5th Cir. 2015).

As for the second element, plaintiff contends that defendant's statements constitute defamation <u>per se</u>. A statement is defamatory <u>per se</u> if it falls within one of the following categories: (1) imputation of a crime, (2) imputation of a loathsome disease, (3) injury to a person's office, profession, or calling, or (4) imputation of sexual misconduct. <u>In re Lipsky</u>, 460 S.W.3d at 596; <u>Downing v. Burns</u>, 348 S.W.3d 415, 424 (Tex. App.-Houston [14th Dist.] 2011, no pet.); <u>Gray v. HEB Food Store No. 4</u>, 941 S.W.2d 327, 329 (Tex. App.-Corpus Christi 1997, writ denied). Plaintiff neglects to provide any explanation as to how any of the statements at issue constitutes defamation <u>per se</u>. Doc. 212 at 22-23. Hence, the argument is waived. <u>Keelan v. Majesco Software, Inc.</u>, 407 F.3d 332, 339 (5th Cir. 2005). That defendant may have felt threatened does not mean that he accused Thomas of a crime.[10] None of the statements fits any of the four categories.

As for fault, plaintiff has not come forward with summary judgment evidence to establish a genuine fact issue as to defendant's culpability. Doc. 212 at 21-22.[11] To establish that

---

[10]Defendant's perception that Thomas was an aggressor, that he, defendant, was scared and felt threatened, and that other students had heard Thomas call defendant a faggot are opinions that would not support a defamation claim. See Dallas Morning News, Inc. v. Tatum, 554 S.W.3d 614, 624 (Tex. 2018).

[11]Plaintiff fails to cite to the record in support of his argument, which is highly misleading. For example, he says that Moore testified that he viewed Thomas's alleged communications as involving
(continued...)

defendant acted negligently, plaintiff must show that defendant knew or should have known that the statements were false and that the content of defendant's publication would warn a reasonably prudent person of its defamatory potential. Foster v. Laredo Newspapers, Inc., 541 S.W.2d 809, 819 (Tex. 1976); Scripps Tex. Newspapers, L.P. v. Belalcazar, 99 S.W.3d 829, 837 (Tex. App.-Corpus Christi 2003, pet. denied). Here, no other conclusion could be reached but that defendant believed the statements he made regarding Thomas were true. He did not know or have reason to know that the statements were false.

Finally, defendant urges that plaintiff cannot present competent evidence of compensable damages. Plaintiff's response is no response at all.[12] He ignores the contention that he failed to provide a computation of each category of damages in accordance with Rule 26(a)(1)(A)(iii) of the Federal Rules of Civil Procedure. The record reflects that the disclosure was made regarding the actions of UTA, not defendant. Doc. 204 at App. 272-73. Thus, excluding any evidence of damages would be

---

[11](...continued)
sexual misconduct. Doc. 212 at 22. On the appeal from the judgment in favor of UTA, he took the position that Moore had erred in concluding that defendant's allegations alleged only harassment and not sexual harassment. 938 F.3d at 212. In any event, that Snow and/or Moore, applying UTA policy, chose to investigate whether Thomas had threatened or harassed defendant does not mean that defendant was negligent.

[12]Again, failure to address defendant's arguments amounts to waiver. Keelan v. Majesco Software, Inc., 407 F.3d 332, 339 (5th Cir. 2005). Moreover, speculation, improbable inferences, and unsubstantiated assertions are insufficient to avoid summary judgment. Lawrence, 808 F.3d at 673.

appropriate. CQ, Inc. v. TXU Min. Co., L.P., 565 F.3d 268, 280 (5th Cir. 2009). In any event, an award of mental anguish damages must be supported by direct evidence of its nature, duration, and severity, in addition to causation. Service Corp. Int'l v. Guerra, 348 S.W.3d 221, 231 (Tex. 2011); Bentley v. Bunton, 94 S.W.3d 561, 606 (Tex. 2002). In response, plaintiff does not point to any such evidence, but generally to certain pages of his appendix that do not provide the specificity required. Doc. 212 at 23 (citing Doc. 213, APPX 124-53). All he can say and does say is that Thomas committed suicide.[13] But suicide is considered an unforeseeable intervening act.[14] Estate of Ko by Hill v. Sears Roebuck & Co., 982 F. Supp. 471, 475 (E.D. Mich. 1997); Speer v. United States, 512 F. Supp. 670, 680 (N.D. Tex. 1981), aff'd, 675 F.2d 100 (5th Cir. 1982); Exxon Corp. v. Brecheen, 526 S.W.2d 519, 524 (Tex. 1975). The ipse dixit of plaintiff's expert does not make it otherwise.

---

[13] There is no competent evidence that Thomas suffered any compensable mental anguish prior to his suicide. See Hitt v. Connell, 301 F.3d 240, 250 (5th Cir. 2002)(hurt feelings, anger, and frustration are not enough); Brady v. Fort Bend County, 145 F.3d 691, 718 (5th Cir. 1998)(being highly upset and experiencing the worst thing ever are not enough). Thomas's suicide came as a complete surprise.

[14] There is no contention that defendant caused Thomas to become so delirious or insane that Thomas did not understand the decision to take his own life or it was impossible for him to resist doing so. See Exxon Corp. v. Brecheen, 526 S.W.2d 519, 524 (Tex. 1975).

14

For the reasons discussed herein, plaintiff likewise has failed to raise a genuine issue of material fact as to the defamatory false impression claim.[15]

VI.

Order

The court ORDERS that defendant's motion for summary judgment be, and is hereby, granted; that plaintiff take nothing on his claims against defendant; and, that such claims be, and are hereby, dismissed.

SIGNED January 28, 2020.

JOHN McBRYDE
United States District Judge

---

[15] Plaintiff does not separately address this claim, but mentions it in his discussion of defamation, where he addresses potential jury issues rather than facts. Doc. 212 at 19-21.